UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMPSON STRONG-TIE COMPANY, INC, <br><br> Plaintiff, <br><br> v. <br><br> OZ-POST INTERNATIONAL, LLC, <br><br> Defendant. | Case No. 3:18-cv-01188-WHO <br><br> **CLAIM CONSTRUCTION ORDER** <br> Re: Dkt. No. 71 |

# INTRODUCTION

This case involves a patent dispute between competitors Simpson Strong-Tie Company, Inc. ("Simpson") and Oz-Post International LLC dba OZCO Building Products ("OZCO"), both of which design and manufacture connectors and anchors for the construction industry. The parties have asked me to construe terms from one of the two OZCO patents Simpson's products allegedly infringe. Based on the parties' briefing and the March 13, 2019 hearing, I will construe the terms as set forth below.

# BACKGROUND

The United States Patent and Trademark Office issued United States Design Patent Number D798,701 ("the '701 Patent") on October 3, 2017 and United States Patent Number 9,957,998 ("the '998 Patent") on May 1, 2018. The patents protect the design and the utility of OZCO's washer and screw. Answer to Second Amended Complaint [Dkt. No. 53] ¶ 49. The parties do not request construction of the '701 Patent.

The '998 Patent aims to simulate antique architectural hardware (like rivet, nail, and pin or nut, bolt, and washer connectors) with mounting hardware that is both easier to install and more

1 cost effective. *See* '998 Patent, Storm Decl. Ex. A [Dkt. No. 74-2]1:30–31, 53–56. The specification notes as one feature that "the user is not limited in selection of the mounting device," but rather the apparatus is compatible with mounting hardware of different lengths, sizes, and grades. '998 Patent at 5:16–18. Of the eight claims in the '998 Patent, only claim 1 is an independent claim. OZCO alleges infringement of claims 1–5 and 7.

## LEGAL STANDARD

Claim construction is a matter of law. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). "Generally, a claim term is given its ordinary and customary meaning—the meaning that a term would have to a person of ordinary skill in the art in question at the time of the invention." *Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F.3d 1312, 1320 (Fed. Cir. 2016) (internal quotation marks and citation omitted). In determining the proper construction of a claim, a court begins with the intrinsic evidence of record, consisting of the claim language, the patent specification, and, if in evidence, the prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005); *see also Vitronics*, 90 F.3d at 1582. "A claim term used in multiple claims should be construed consistently . . . ." *Inverness Med. Switzerland GmbH v. Princeton Biomeditech Corp.*, 309 F.3d 1365, 1371 (Fed. Cir. 2002).

"The appropriate starting point . . . is always with the language of the asserted claim itself." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1312. "There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). Such redefinition or disavowal need not be express to be clear. *Trustees of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1364 (Fed. Cir. 2016).

Like a person of ordinary skill in the art, courts read terms in the context of the claim and of the entire patent, including the specification. *Phillips*, 415 F.3d at 1313. The specification is "the single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582. "The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). The court may also consider the prosecution history of the patent, if in evidence. *Markman*, 52 F.3d at 980. The prosecution history may "inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Phillips*, 415 F.3d at 1317 (citing *Vitronics*, 90 F.3d at 1582-83); *see also Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005) ("The purpose of consulting the prosecution history in construing a claim is to exclude any interpretation that was disclaimed during prosecution.") (internal quotations omitted).

In most situations, analysis of this intrinsic evidence alone will resolve claim construction disputes, *Vitronics*, 90 F.3d at 1583; however, a court can further consult "trustworthy extrinsic evidence" to compare its construction to "widely held understandings in the pertinent technical field," *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1309 (Fed. Cir. 1999). Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. All extrinsic evidence should be evaluated in light of the intrinsic evidence, *Phillips*, 415 F.3d at 1319, and courts should not rely on extrinsic evidence in claim construction to contradict the meaning of claims discernible from examination of the claims, the written description, and the prosecution history, *Pitney Bowes*, 182 F.3d at 1308 (citing *Vitronics*, 90 F.3d at 1583).

**DISCUSSION**

**I.     AGREED CONSTRUCTIONS**

Between their briefs and discussions during the claim construction hearing, the parties reached agreement on the following terms in the '998 Patent.

3

| Claim Term | Agreed Construction |
|---|---|
| "hexagonal shape" (claim 1) | "shape with six sides" |
| "plurality" (claims 1, 2) | "two or more" |
| "cap" (claims 1, 4) | "a closed cover" |
| "disposed within" (claim 1) | "situated entirely within" |

## II. DISPUTED CONSTRUCTIONS

The parties dispute the following terms. For many, OZCO argues that no construction is necessary while Simpson asserts that the parties dispute the scope of the term, making construction as a matter of law necessary and appropriate.

### A. Separate Elements

| Terms | Simpson's Proposal | OZCO's Proposal | Court's Ruling |
|---|---|---|---|
| "cap," "screw," and "washer/nut member" | The "cap," "screw," and "washer/nut member" are separate elements | Not appropriate for resolution at claim construction and/or no separateness requirement | The "cap," "screw," and "washer/nut member" are separate elements |

Simpson argues that I should construe the "cap," "screw," and "washer/nut member" as separate elements of claim 1. OZCO first argues that Simpson is improperly using claim construction to "resolve a factual question about infringement." OZCO Opening 11. Simpson counters that it asks me to "interpret the *scope* of the claims," which is an appropriate task for claim construction. Simpson Response 12–13.

The parties clearly disagree on the scope of these terms, which makes this a question of law that is appropriately resolved during claim construction. It is not the meaning of the words that determines whether a term needs to be construed; rather, it is whether there is an actual dispute over the scope of the term. "A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008). "When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *Id.*; *see also Eon CorpIP Holdings v. Aruba Networks*, 62 F. Supp. 3d 942, 953

4

(N.D. Cal. 2014) (Tigar, J.) (noting the court's "obligation to establish the legal scope of the claim" although some proposals did not "fit precisely as 'constructions' of the claim term").

Addressing the substance of Simpson's proposal, OZCO argues that it inappropriately imposes a requirement that is not found in the claim language, and nowhere does the specification disavow the scope of the claim language. OZCO Opening 9–11. Simpson counters that the claims list the elements separately and that "[t]he patent specification repeatedly, consistently, and exclusively discusses these elements as separate structures that perform different functions." Simpson Response 15. At the claim construction hearing, Simpson clarified that it does not seek a construction that "cap," "screw," and "washer/nut member" are necessarily physically distinct but that the claims recite them as separate *elements*, each of which must be found in any allegedly infringing device.

"Where a claim lists elements separately, the clear implication of the claim language is that those elements are distinct components of the patented invention." *Becton, Dickinson & Co. v. Tyco Healthcare Grp.*, 616 F.3d 1249, 1254 (Fed. Cir. 2010) (internal quotation marks and formatting omitted). Where elements are listed separately, courts construe them as distinct components unless the claim language itself suggests otherwise. *See id.* at 1254–55 (affirming separateness of elements listed separately where the "unequivocal language" of the claim required separate structures); *Gaus v. Conair Corp.*, 363 F.3d 1284, 1288–89 (Fed. Cir. 2004) (affirming separateness requirement where the "clear implication of the claim language" was that the components were distinct); *Regents of Univ. of Minnesota v. AGA Med. Corp.*, 717 F.3d 929, 935 (Fed. Cir. 2013) (affirming separateness where the language described "first" and "second" disks that were joined); *Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398, 1404–05 (Fed. Cir. 1996) (affirming separateness of two portions because where one was "'also provided,' they logically [could not] be one and the same"). "In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings." *CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000).

Here, the claim language, the claim structure, and the specification all support a construction that the cap, screw, and washer/nut member are separate components of the '998

5

Patent. Claim 1 lists two separate elements: (1) a washer/nut member and (2) a cap. Claims 1 and 3 mention a screw, which is not claimed, and explain the relationship between the washer/nut member, cap, and screw. Importantly, Claim 7 describes the apparatus as "further comprising the screw," which clearly confirms that the screw is distinct from the cap and washer/nut member. *See Engel*, 96 F.3d at 1404–05 (reaching the same conclusion where one portion was "also provided"). Because all the elements are listed separately, the implication is that they are distinct components of the '998 Patent. *See Becton*, 616 F.3d at 1254.

The specification confirms the separate elements limitation by exclusively discussing and representing the cap, screw, and washer/nut member separately. *See, e.g.*, '998 Patent Abstract (referencing separately the washer/nut member, the cap, and the head portion of the bolt); *id.* at 5:26–38 (referencing separately the mounting device and the cap portion); *id.* at 5:12–16 ("The opening in the cylindrical member of the base portion is sized to permit reception of a *head portion of the mounting device* as well as receive the *cap portion*.") (emphasis added). As Simpson points out, the specification touts the fact that the user can select any mounting device, which is so because the cap will cover a mismatched one. *See id.* at 5:16–17. Just one line could seem to suggest that the screw could function as the cap: "[t]he cap portion may comprise, for example, a steel set screw." *See* '998 Patent 5:7–8. But as OZCO acknowledged in its reply, a set or grub screw "does not have a head." Reply 13. This single example provides for a headless screw and makes no reference to the head of another screw or any other type of mounting device, which reinforces the idea that the screw is a distinct component from the cap and washer/nut member. In other words, nothing in the specification casts doubt on the claim language, which unambiguously recites separate elements.[1]

In opposing Simpson's arguments, OZCO primarily asserts that the claim language does

---

[1] Although there is no need to rely on evidence outside of the claims and specifications, I further note that OZCO discussed the cap, screw, and washer/nut member as separate elements in its filings before PTAB. *See* Draper Decl. Ex. B [Dkt. No. 79-3] 4 ("[A] screw is received within the washer/nut member and is driven into wood or another material."); *id.* ("The screw together with the washer/nut member creates the structurally sound connection, and the cap completes the bolted architectural hardware appearance."); *id.* (noting that "the washer/nut member and the cap . . . are claimed in relationship to a screw.").

not support a requirement of physically separate components. *See* OZCO Opening 9–10; *Skedco, Inc. v. Strategic Operations, Inc.*, 685 F. App'x 956, 959 (Fed. Cir. 2017) (overturning separateness requirement where separate structures were not necessary for "fluid communication"); *Powell v. Home Depot U.S.A.*, 663 F.3d 1221, 1231–32 (Fed. Cir. 2011) (affirming that the structures did not need to be physically separate where such separateness was not necessitated by "in fluid communication" language and where the specifications suggested that one portion could perform two functions). But Simpson clarified at the hearing that it requests a construction that the cap, screw, and washer/nut member are separate *elements*, each of which must be found in an accused device for OZCO to prove direct infringement. With the full support of the intrinsic evidence, that is how I construe the terms.

B. **"washer/nut member" (claims 1, 2)**

| Term | Simpson's Proposal | OZCO's Proposal | Court's Ruling |
|---|---|---|---|
| "washer/nut member" | The phrase "a washer/nut member comprising" is a preamble that is not limiting<br><br>The term "washer/nut member" adds no additional limitations to the following limitations recited in claim 1 after the "washer/nut member compromising" preamble:<br><br>A plurality of outer surfaces disposed in a hexagonal shape; an inner cylindrical surface disposed radially internal to the plurality of outer surfaces; an intermediate cylindrical surface disposed radially between the plurality of outer surfaces and the inner | "Hardware having an appearance of a combined washer and nut" | The phrase "a washer/nut member comprising" is a preamble that is not limiting |

| | | | |
|---|---|---|---|
| | cylindrical surface; and an annular surface disposed radially between the inner cylindrical surface and the intermediate cylindrical surface<br><br>To the extent Patent Owner asserts that the term "washer/nut member" adds additional limitations, the patent claims are invalid based on indefiniteness | | |

OZCO argues that the phrase "a washer/nut member comprising" is not a preamble because "[a]n apparatus, comprising," which comes before, is the preamble. OZCO Opening 12. Instead, I should construe the term and find that it limits the language following it. Simpson counters that "[t]he term 'washer/nut member' merely gives a name to the recited indented elements that follow the preamble within the preamble" rather than creating additional limitations on them. Simpson Response 22.

A preamble encompasses the introductory words of a claim. *Corning Glass Works v. Sumitomo Elec. U.S.A.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989). The preambles of the claims recite the invention as "comprising" the claim elements that follow. "In the parlance of patent law, the transition 'comprising' creates a presumption that the recited elements are only a part of the device, that the claim does not exclude additional, unrecited elements." *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l*, 246 F.3d 1336, 1348 (Fed. Cir. 2001); *see also Barnes & Noble, Inc. v. LSI Corp.*, No. C-11-2709 EMC, 2014 WL 1365422, at *23 (N.D. Cal. Apr. 7, 2014) ("[W]hen used in the body of a claim, and not as a transition, the term 'comprising' should be interpreted according to the normal rules of claim interpretation.").

A preamble is generally not construed to limit the claim language that follows. *See Summit 6, LLC v. Samsung Elecs.*, 802 F.3d 1283, 1292 (Fed. Cir. 2015). It may be limiting "if it recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the

claim." *Catalina Mktg. Int'l v. Coolsavings.com*, 289 F.3d 801, 808 (Fed. Cir. 2002) (internal quotation marks and citation omitted). But a preamble is not limiting if it "merely states the purpose or intended use of an invention," *see Pacing Techs., LLC v. Garmin Int'l*, 778 F.3d 1021, 1023 (Fed. Cir. 2015) (internal quotation marks and citation omitted), or if it "is duplicative of the limitations in the body of the claim and merely provides context for the limitations," *see Summit 6*, 802 F.3d at 1292.

OZCO has not persuaded me that the term "washer/nut member" is limiting.[2] First, it would be inconsistent with the remainder of the claim language. Of the four tabbed descriptions that follow the term, none references a washer or anything washer-like; instead, claim 2 introduces the term "flange portion" for the first time. That claim reads, "The apparatus of claim 1 wherein the washer/nut member *further comprises* a flange portion disposed radially external to the plurality of outer surfaces." Given that all the terms following washer/nut member discuss only the nut piece—confirmed by claim 2's "further comprising" the washer piece—the term cannot be limiting. Instead, I construe it as a label that "merely provides context for the limitations" that follow it.[3] *See Summit 6*, 802 F.3d at 1292.

OZCO argues that if I construe "washer/nut member" in this way, I will essentially render the following four elements meaningless because they will no longer be understood in the context of the term. *See* OZCO Response 14. I disagree. My conclusion does not strike the language from the claim but rather finds that it is a label rather than an additional limitation. Even if I concluded that washer/nut member was limiting, I would not construe it the way OZCO proposes. "[H]ardware having an appearance of a combined washer and nut" would not aid a fact finder because it merely rephrases the plain and ordinary meaning of the term.[4]

---

[2] A preamble ("[a]n apparatus, comprising") followed by a preamble ("a washer/nut member comprising") is an unusual but not unheard of structure. *See Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1374 (Fed. Cir. 2008) (concluding that claims were not indefinite for mixing two types of subject matter because the language was instead a "preamble within a preamble" structure).

[3] In addition, OZCO does not assert that it relied on the language during its prosecution of the '998 Patent.

[4] Simpson asserts that OZCO's proposed construction would render the term indefinite because

9

### C. "annular surface" (claims 1, 3)

| Term | Simpson's Proposal | OZCO's Proposal | Court's Ruling |
|---|---|---|---|
| "annular surface" | "a ring-shaped surface between two circles"[5] | No construction necessary | "a ring-shaped surface between two circles" |

OZCO asserts that "annular surface" is easily understood by laypersons and that Simpson "proposes replacing a generally understood term with unnecessary and confusing technical terms." OZCO Opening 20. Simpson asserts that OZCO is likely to challenge Simpson's prior art references on the basis of their annular surfaces. Simpson Response 32.

I cannot agree with OZCO that "annular surface" is easily understood by a layperson. The "annular surface" term appears three times in claim 1 and once in claim 3. The first time it appears, the disputed term reads: "a washer/nut member comprising: . . . an annular surface disposed radially between the inner cylindrical surface and the intermediate cylindrical surface." '998 Patent 6:1:23, 31–33. I believe construction would aid the jury, and OZCO does not argue that Simpson's proposal differs from the way a person skilled in the arts would understand this term or is otherwise inaccurate. Accordingly, I will adopt Simpson's proposed construction.

### D. "disposed radially . . ." (claims 1, 2)

| Term | Simpson's Proposal | OZCO's Proposal | Court's Ruling |
|---|---|---|---|
| "disposed radially . . ." | "extending uniformly from and perpendicular to the longitudinal axis of the washer/nut member . . ."[6] | No construction necessary | "extending uniformly from and perpendicular to a straight line running through the center of the washer/nut member" |

---

given that both washers and nuts come in so many different shapes and sizes, the term does not inform those skilled in the arts about the scope of the invention. Simpson Response 24–27. I do not address those arguments here because I adopt Simpson's proposal.

[5] In its response, Simpson proposes the construction that it originally put forth in the parties' conversations prior to filing their joint chart: "[t]he space between two circles or circular cylinders, which may be concentric or eccentric." Simpson Response 33. Simpson simplified the proposal in response to OZCO's critique that it was too confusing. *Id.* I agree that the proposal is overly complicated.

[6] Simpson also proposes that "external to" be construed as "outside of" and "internal to" be construed as "within." The Patent Local Rules instruct parties to identify terms "whose construction will be most significant to the resolution of the case up to a maximum of 10." Patent L.R. 4-3(c). Listing each phrase with the term "disposed radially" increases the number of terms beyond 10. I decline to construe the additional terms for that reason and because their construction would not aid the jury.

10

The parties dispute whether a jury could readily understand the term "disposed radially." *See* OZCO Opening 21–23; Simpson Response 37–38. Simpson asserts that construction is needed to "explain the required relationships between the other recited elements of the claim." Simpson Response 37. It further cites cases in which other courts have construed the term "radially" in a manner similar to the one it proposes. *See Venetec Int'l v. Med. Device Grp.*, No. 06CV83 (WMc), 2007 U.S. Dist. LEXIS 56770, at *9 (S.D. Cal. Aug. 3, 2007) (noting the prior construction of "radially extending member" to mean "[a] member extending in the direction of the radius, which is perpendicular to the longitudinal axis of the tubular body"); *Regal Beloit Am., Inc. v. Broad Ocean Motor LLC*, No. 4:16-CV-00111, 2017 U.S. Dist. LEXIS 83582, at *41 (E.D. Mo. June 1, 2017) (construing "radially external" as "facing outward relative to the body of the housing and the ridge").

I agree with Simpson that construction of this term would aid the jury. OZCO did not raise any inconsistencies or inaccuracies with Simpson's proposal in its briefing or at the hearing. In the tentative constructions I provided to the parties before the hearing, I proposed a simpler variation of Simpson's construction: "extending uniformly from and perpendicular to *a straight line running through the center* of the washer/nut member." Neither party addressed this term at the hearing or pointed out any inaccuracies in my proposal. Accordingly, I will construe this term in that way.

### E. "flange portion" (claim 2)

| Term | Simpson's Proposal | OZCO's Proposal | Court's Ruling |
|---|---|---|---|
| "flange portion" | "a projecting edge that may but need not be integral to the other portions of the washer/nut member" | No construction necessary | "a projecting edge"<br><br>The flange portion may but need not be combined with the washer/nut member |

The parties have two disputes over this term. First, Simpson proposes construing "flange portion" as "a projecting edge" whereas OZCO asserts that no construction is necessary and that Simpson's proposal injects uncertainty. *See* OZCO Opening 18–19; Simpson response 29–30. In its reply, OZCO seems to concede the accuracy of Simpson's proposed construction, writing, "OZCO agrees that a flange portion may be a projecting edge, but believes a better wording is

11

'projecting portion.'" Reply 14. Because the parties generally agree on the term's accuracy and because I believe it will aid the jury, I will adopt Simpson's proposal.

Second, OZCO asserts that it would be inappropriate to construe the flange portion as not necessarily being integral to the washer/nut member. According to OZCO, the washer/nut member has an appearance of a combined washer and nut because the flange portion is in fact integral. OZCO Opening 18–19; Reply 14–15. At the hearing, OZCO raised a further concern that the term "integral" is ambiguous and has required construction when used as a term in other patents. Simpson counters that no language in the claims mandates that the flange portion necessarily be integral, combined, or attached to the washer/nut member. Simpson Response 29–30. In fact, the flange portion is absent from the elements following washer/nut member in claim 1 and instead only arises in claim 2. *Id.*

Claim 2 reads, "The apparatus of claim 1 wherein the washer/nut member further comprises a flange portion disposed radially external to the plurality of outer surfaces." As Simpson points out, the claim language itself "do[es] not specify anywhere that the flange is integral, or even that the 'flange' is fixed or attached to a six-sided component." *See* Simpson Response 29.[7] But OZCO calls attention to Figures 2, 3, 6, 8, and 11, which all show the flange portion connected to the washer/nut member. The specification further notes, "The hex nut may be welded to the washer with a concentric configuration." '998 Patent, 4:59–61. Only Figure 7 shows the flange separated from the nut, and the specification clarifies that it represents an "exploded view." *See* 4:44–46; Simpson Response 29–30.

OZCO has not persuaded me that the claim language mandates that the flange portion be integral to, combined with, or attached to the washer/nut member. To resolve this dispute of scope without inserting the word integral, which could create ambiguity, I conclude that the flange portion may but need not be combined with the washer/nut member.

**F.    "screw" (claims 1, 3, 7)**

| Term | Simpson's Proposal | OZCO's Proposal | Court's Ruling |

---

[7] Simpson points out that the claims themselves could have included the term "integral." Simpson 30; *see Vanguard Prods. Corp. v. Parker Hannifin Corp.*, 234 F.3d 1370, 1372 (Fed. Cir. 2000) (construing the term "integral").

12

| Term | Simpson's Proposal | OZCO's Proposal | Court's Ruling |
|---|---|---|---|
| "screw" | "a fastener having external helical threads, intended either to cut its own thread or engage in a threaded hole" | No construction necessary | Plain and ordinary meaning |

OZCO argues that Simpson's proposed construction "replac[es] a generally understood term with unnecessary and confusing technical terms." OZCO Opening 16. Simpson counters that the dispute goes to the scope of the term, that its proposal simplifies the technical definition, and that OZCO does not dispute its accuracy. Simpson Response 36. I am not convinced that this dispute goes to the scope of the term,[8] and Simpson's proposal does nothing to provide clarity on the meaning of a screw, which an ordinary person skilled in the arts and a layperson can both understand. No construction is necessary; the plain and ordinary meaning controls.

### G. "head portion" (claim 3)

| Term | Simpson's Proposal | OZCO's Proposal | Court's Ruling |
|---|---|---|---|
| "head portion" | "the portion of a screw used to apply torque to the screw" | No construction necessary | Plain and ordinary meaning |

OZCO contends that this term does not require construction, whereas Simpson asserts that this question is again one of scope: the parties' experts need guidance given the wide variety of screw shapes. Simpson Response 33–34. OZCO points out that Simpson's proposed construction could cause even headless screws to have parts that classify as heads under this overly complicated definition of a generally understood term. OZCO Reply 13 (including an image from Simpson's invalidity contentions).

A jury is capable of understanding the term "head portion [of the screw]." Simpson's proposed language unnecessarily adds complication. *See X One, Inc. v. Uber Techs.*, No. 16-CV-06050-LHK, 2017 WL 3581184, at *11 (N.D. Cal. Aug. 18, 2017) (Koh, J.) (excluding a phrase because "it would be confusing and unhelpful to the jury"). Construction of this term is unnecessary; the plain and ordinary meaning controls.

---

[8] Even if it arguably does, my constructions of other disputed terms in this Order should be sufficient to resolve the dispute.

13

### H. "shaft portion" (claims 1, 3)

| Term | Simpson's Proposal | OZCO's Proposal | Court's Ruling |
|---|---|---|---|
| "shaft portion" | "the cylindrical portion of a screw along all or part of which the screw's external helical threads run" | No construction necessary | Plain and ordinary meaning |

The dispute here mirrors the dispute for "head portion" and "screw." OZCO asserts that no construction is necessary because this term is readily understandable. Simpson argues that this question is one of scope given the Patent Owner Preliminary Response ("POPR") OZCO filed. Simpson Response 34–35. There, OZCO challenged one of Simpson's prior art references by differentiating the flange portion and the shaft portion. *Id.* Again here, Simpson's proposed construction adds complication to a term that can be readily understood by a jury.

### I. "is configured to surround a shaft portion of a screw that contacts the annular surface" (claim 1)

| Term | Simpson's Proposal | OZCO's Proposal | Court's Ruling |
|---|---|---|---|
| "is configured to surround a shaft portion of a screw that contacts the annular surface" | "is configured to surround a shaft portion of a screw, *which screw* contacts the annular surface" | No construction necessary | "is configured to surround a shaft portion of a screw, which screw contacts the annular surface" |

OZCO argues that no construction of this term is necessary and that Simpson's proposal fails to add clarity. OZCO Opening 21. Simpson counters that it is not clear whether the clause "that contacts the annular surface" refers back to "shaft portion" or "screw." Simpson Response 31. Indeed, Simpson initially proposed that the claim be construed to add "which shaft portion contacts the annular surface" until OZCO clarified that it should instead be understood as referring back to "screw." Simpson Response 31; *see* Draper Decl., Ex. F [Dkt. No. 79-7] 10 (Simpson's preliminary proposed claim constructions).

I agree with Simpson that as drafted, this term is not clear. Accordingly, construction will aid the jury. Because OZCO does not dispute the accuracy of Simpson's proposal or offer an alternative, I will adopt Simpson's construction.

14

# CONCLUSION

For the forgoing reasons, the terms are construed as follows:

| Claim Term | Construction |
|---|---|
| "hexagonal shape" | "shape with six sides" |
| "plurality" | "two or more" |
| "cap" | "a closed cover" |
| "disposed within" | "situated entirely within" |
| "cap," "screw," and "washer/nut member" | The "cap," "screw," and "washer/nut member" are separate elements |
| "washer/nut member" | The phrase "a washer/nut member comprising" is a preamble that is not limiting |
| "annular surface" | "a ring-shaped surface between two circles" |
| "disposed radially . . ." | "extending uniformly from and perpendicular to a straight line running through the center of the washer/nut member" |
| "flange portion" | "a projecting edge"<br><br>The flange portion may but need not be combined with the washer/nut member |
| "screw" | Plain and ordinary meaning |
| "head portion" | Plain and ordinary meaning |
| "shaft portion" | Plain and ordinary meaning |
| "is configured to surround a shaft portion of a screw that contacts the annular surface" | "is configured to surround a shaft portion of a screw, which screw contacts the annular surface" |

**IT IS SO ORDERED.**

Dated: March 26, 2019



William H. Orrick
United States District Judge