United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMPSON STRONG-TIE COMPANY, INC, | Case No. 3:18-cv-01188-WHO |
| Plaintiff, | **ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND MOTION TO STRIKE** |
| v. | |
| OZ-POST INTERNATIONAL, LLC, | Re: Dkt. Nos. 102, 104, 105, 106, 123, 124 |
| Defendant. | |

This case involves patents and products designed to serve as cost-effective alternatives to antique bolted hardware. Before me are cross-motions for partial summary judgment by declaratory judgment plaintiff Simpson Strong-Tie Company, Inc. ("Simpson") and patent-owner and defendant Oz-Post International LLC dba OZCO Building Products ("OZCO"), along with OZCO's motion to strike portions of an expert report. For the reasons set forth below, I will grant partial summary judgment in favor of Simpson and deny OZCO's motion to strike.

## BACKGROUND

The United States Patent and Trademark Office issued United States Design Patent Number D798,701 ("the D'701 Patent" or "the design patent") on October 3, 2017 and United States Patent Number 9,957,998 ("the '998 Patent" or "the utility patent") on May 1, 2018. D'701 Patent, Declaration of J. Michael Thomas ("Thomas Decl.")[1] Ex. 2 [Dkt. No. 105-2]; '998 Patent,

---

[1] Simpson noted in its opposition that OZCO had failed to file a declaration to authenticate the exhibits filed in support of its motion for summary judgment. Simpson Oppo. 2 n.2. On October 14, 2019, OZCO filed a motion for leave to file the Thomas declaration in support of its motion for summary judgment. Dkt. No. 123. Simpson opposed, arguing that there was no good cause for OZCO's failure and that I should refuse to consider the exhibits. I am interested in the merits of these motions. OZCO's motion for leave to file the tardy declaration is GRANTED; I will consider the declaration at Dkt. No. 123-1 in conjunction with the exhibits at Dkt. Nos. 104 and 105. The motion for expedited briefing at Dkt. No. 124 is TERMINATED AS MOOT.

Thomas Decl. Ex. 1 [Dkt. No. 105-1]. The '998 Patent aims to simulate antique architectural

hardware (like rivet, nail, and pin or nut, bolt, and washer connectors) with mounting hardware

that is both easier to install and more cost effective. *See* '998 Patent 1:30–31, 53–56.

OZCO asserts that Simpson's Hex Head washer and Structural Wood Screw ("the Accused

Products") infringe on its patents when they are used together. On March 26, 2019, I construed

the '998 Patent, resolving the parties' disputes and adopting certain agreed constructions. *See*

Claim Construction Order [Dkt. No. 86].

On September 3, 2019, both parties moved for partial summary judgment. Simpson

Motion for Partial Summary Judgment ("Simpson MSJ") [Dkt. No. 102]; OZCO Motion for

Partial Summary Judgment ("OZCO MSJ") [Dkt. No. 105, 103-16 (unredacted)]. OZCO also

filed a motion to strike. Motion to Strike Fred P. Smith Expert Report ("MTS") [Dkt. No. 106]. I

heard argument on October 23, 2019. Dkt. No. 128.

## LEGAL STANDARD

### I.    SUMMARY JUDGMENT

#### A.    Generally

Summary judgment on a claim or defense is appropriate "if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show

the absence of a genuine issue of material fact with respect to an essential element of the non-

moving party's claim, or to a defense on which the non-moving party will bear the burden of

persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has

made this showing, the burden then shifts to the party opposing summary judgment to identify

"specific facts showing there is a genuine issue for trial." *Id.* The party opposing summary

judgment must present affirmative evidence from which a jury could return a verdict in that

party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

On summary judgment, the court draws all reasonable factual inferences in favor of the

2

non-movant. *Id.* at 255. In deciding the motion, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## B. Noninfringement

Summary judgment of noninfringement requires a two-step analysis. "First, the claims of the patent must be construed to determine their scope. Second, a determination must be made as to whether the properly construed claims read on the accused device." *Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999) (internal citations omitted). "The determination of infringement, both literal and under the doctrine of equivalents, is a question of fact." *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1318 (Fed. Cir. 2003); *see also Kilopass Tech. Inc. v. Sidense Corp.,* No. 10–cv–02066–SI, 2012 WL 3545286, at *4 (N.D. Cal. Aug. 16, 2012). Because the ultimate burden of proving infringement rests with the patentee, an accused infringer may show that summary judgment of noninfringement is proper either by producing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to create a material factual dispute as to any essential element of the patentee's case. *See Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001). "Summary judgment of noninfringement may only be granted if, after viewing the alleged facts in the light most favorable to the nonmovant and drawing all justifiable inferences in the nonmovant's favor, there is no genuine issue whether the accused device is encompassed by the patent claims." *Id.* Direct infringement may be proven either by literal infringement or under the doctrine of equivalents. "Literal infringement requires the patentee to prove that the accused device contains each limitation of the asserted claim(s)." *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000). "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Id.*

## II.    MOTION TO STRIKE

### A.    Patent Local Rules

"Patent Local Rule 3 requires patent disclosures early in a case and streamlines discovery by replacing the series of interrogatories that parties would likely have propounded without it." *ASUS Computer Int'l v. Round Rock Research, LLC*, No. 12-CV-02099-JST, 2014 WL 1463609, at *1 (N.D. Cal. Apr. 11, 2014) (internal quotation marks and modifications omitted).  The disclosure requirements of Rule 3 are designed "to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *Nova Measuring Instruments Ltd. v. Nanometrics, Inc.*, 417 F. Supp. 2d 1121, 1123 (N.D. Cal. 2006).  "They are also designed to provide structure to discovery and to enable the parties to move efficiently toward claim construction and the eventual resolution of their dispute." *Golden Bridge Tech. Inc v. Apple, Inc.*, No. 12-cv-04882-PSG, 2014 WL 1928977, at *3 (N.D. Cal. May 14, 2014) (internal quotation marks omitted).

Patent Local Rule 3-1 requires that a party claiming patent infringement serve a "Disclosure of Asserted Claims and Infringement Contentions" no more than fourteen days after the initial case management conference.  This disclosure must include "[e]ach claim of each patent in suit that is allegedly infringed by each opposing party, including for each claim the applicable statutory subsections of 35 U.S.C. § 271 asserted."  Patent L.R. 3-1(a).  The party must also identify "where each limitation of each asserted claim is found within each Accused Instrumentality," and "[w]hether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents."  Patent L.R. 3-1(e).

Patent Local Rule 3-3 requires parties accused of infringement to serve invalidity contentions.  The invalidity contentions must identify "each item of prior art that allegedly anticipates each asserted claim or renders it obvious."  Patent L.R. 3-3(a).  If obviousness is alleged, the invalidity contentions must contain "an explanation of why the prior art renders the asserted claim obvious, including an identification of any combinations of prior art showing obviousness."  Patent L.R. 3-3(b).

"Given the purpose behind [these] disclosure requirements, a party may not use an expert

4

report to introduce new infringement theories, new infringing instrumentalities, new invalidity theories, or new prior art references not disclosed in the parties' infringement contentions or invalidity contentions." *Verinata Health, Inc. v. Sequenom, Inc.*, No. 12-cv-00865-SI, 2014 WL 4100638, at *3 (N.D. Cal. Aug. 20, 2014) (internal quotation marks omitted). "Any invalidity theories not disclosed pursuant to Local Rule 3-3 are barred . . . from presentation at trial (whether through expert opinion testimony or otherwise)." *MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-cv-05341-YGR, 2014 WL 690161, at *1 (N.D. Cal. Feb. 21, 2014). In determining whether to strike some or all of an expert report for failure to comply with the patent local rules, courts in this district have asked, "[W]ill striking the report result in not just a trial, but an overall litigation, that is more fair, or less?" *Apple Inc. v. Samsung Electronics Co.*, No. 11-cv-01846-PSG, 2012 WL 2499929, at *1 (N.D. Cal. June 27, 2012); *Verinata Health*, 2014 WL 4100638, at *3.

## B. Federal Rule of Evidence 702

Rule 702 allows a qualified expert to testify "in the form of an opinion or otherwise" where:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Expert testimony is admissible under Rule 702 "if it is both relevant and reliable." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007). "[R]elevance means that the evidence will assist the trier of fact to understand or determine a fact in issue." *Id.* Under the reliability requirement, expert testimony must "relate to scientific, technical, or other specialized knowledge, which does not include unsubstantiated speculation and subjective beliefs." *Id.* "Importantly, there must be a recognized body of knowledge, learning, or expertise upon which the witness relies. Where there is no field of expertise, nobody will qualify as an expert witness on the subject." *Perez v. Seafood Peddler of San Rafael, Inc.*, No. 12-cv-00116-WHO, 2014 WL 2810144, at *2 (N.D. Cal. June 20, 2014) (internal quotation marks omitted). The burden is on the

proponent of the expert testimony to show, by a preponderance of the evidence, that the admissibility requirements are satisfied. Fed. R. Evid. 702 advisory committee note.

## DISCUSSION

## I.  SUMMARY JUDGMENT ON INFRINGEMENT

Both parties move for partial summary judgment on the question of infringement. Simpson asserts that the undisputed facts show that the Accused Products neither directly nor indirectly infringe on either patent. OZCO counters that the undisputed facts show the Accused Products do infringe claims 1, 2, 4, and 5 of the '998 Patent. Although OZCO asserts infringement of claims 3 and 7, it does not move for summary judgment on those claims.

### A.  Direct Infringement of the '998 Patent

"Once the claims have been correctly construed to determine their scope, the claims must be compared to the accused device." *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001). "[L]iteral infringement requires that each and every limitation set forth in a claim appear in an accused product." *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004). "Any deviation from the claim precludes . . . a finding [of literal infringement]. *Telemac*, 247 F.3d at 1330.

The asserted claims of the '998 Patent read:

> 1. An apparatus, comprising:
> a washer/nut member comprising:
>> a plurality of outer surfaces disposed in a hexagonal shape;
>> an inner cylindrical surface disposed radially internal to the plurality of outer surfaces;
>> an intermediate cylindrical surface disposed radially between the plurality of outer surfaces and the inner cylindrical surface; and
>> an annular surface disposed radially between the inner cylindrical surface and the intermediate cylindrical surface; and
> a cap disposed within the intermediate cylindrical surface;
> wherein the inner cylindrical surface is configured to surround a shaft portion of a screw that contacts the annular surface; and wherein the washer/nut member further comprises an upper annular surface and a flat surface of the cap is substantially flush with the upper annular surface.
> 2. The apparatus of claim 1 wherein the washer/nut member further comprises a flange portion disposed radially external to the plurality of outer surfaces.
> 3. The apparatus of claim 1 further comprising the screw wherein the shaft

United States District Court
Northern District of California

6

portion of the screw is surrounded by the inner cylindrical surface and a head
portion of the screw contacts the annular surface.
4. The apparatus of claim 1 wherein the cap includes a tool receiving feature.
5. The apparatus of claim 4 wherein the tool receiving feature is an opening.
. . .
7. The apparatus of claim 5 further comprising the screw received through the
inner cylindrical surface and the intermediate cylindrical surface.

According to Simpson, the Accused Products do not infringe for two reasons: (i) there is no "cap"

because the screw and the cap are separate elements, and (ii) the head of the screw does not satisfy

the cap limitation because it is not a "closed cover." Simpson MSJ 8-11. OZCO counters that the

question of separate elements is relevant only to claims 3 and 7 and that there are at the very least

factual disputes over whether the head of the screw is a closed cover. OZCO Oppo. 9.

### 1. Separate elements

Simpson first asserts that my Claim Construction Order entitles it to summary judgment

because the head of the screw cannot satisfy the "cap" limitation in claim 1. At claim

construction, I construed the "cap," "screw," and "washer-nut member" as separate components of

the invention:

> Here, the claim language, the claim structure, and the specification all
> support a construction that the cap, screw, and washer/nut member
> are separate components of the '998 Patent. Claim 1 lists two separate
> elements: (1) a washer/nut member and (2) a cap. Claims 1 and 3
> mention a screw, which is not claimed, and explain the relationship
> between the washer/nut member, cap, and screw. Importantly, Claim
> 7 describes the apparatus as "further comprising the screw," which
> clearly confirms that the screw is distinct from the cap and washer/nut
> member. *See Engel*, 96 F.3d at 1404–05 (reaching the
> same conclusion where one portion was "also provided"). Because all the
> elements are listed separately, the implication is that they are distinct
> components of the '998 Patent. *See Becton*, 616 F.3d at 1254.

Claim Construction Order 5–6. In order to establish direct infringement, OZCO must show that

the Accused Products meet each of the elements in the asserted claims. The requirement is not

necessarily that each element be physically distinct or unconnected, but each must be present to

the extent an asserted claim includes it.[2] *Cf. Becton*, 616 F.3d at 1255 ("There can be no literal

---

[2] *See* Simpson MSJ 10 ("As the undersigned counsel stated at the hearing, separate components
that are physically attached to one another (i.e., a cap affixed to the head of a screw) could satisfy
the separate elements construction—because each element would still be mapped to different
components. Rather, Ozco's infringement theory relies on the head of Simpson's Screw (i.e., a
single component) serving as both the 'head of the screw' and the 'cap' (i.e., two separate
elements).").

1   infringement where a claim requires two separate structures and one such structure is missing from

2   an accused device.").

3           According to Simpson, my construction mandates noninfringement because the head of the

4   screw cannot also serve as the cap.  I indeed construed "cap," "screw," and "washer/nut member"

5   as separate elements, but Simpson's argument faces an insurmountable hurdle:  the screw is not

6   part of the apparatus described in claim 1.  Although the language mentions a screw, only a

7   washer/nut member and a cap are elements of claim 1.  *See* '998 Patent 6:22-40.  The claim does

8   describe the *relationship* between the washer/nut member and cap on one hand and a screw on the

9   other hand, but the screw does not become part of the claimed apparatus until claim 3.  Although

10  my separate elements construction stands, I cannot read a requirement into claim 1 that is only

11  found in claims 3 and 7.  *See Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1326

12  (Fed. Cir. 2003) ("[W]hen a patent claim does not contain a certain limitation and another claim

13  does, that limitation cannot be read into the former claim in determining either validity or

14  infringement.") (internal quotation marks omitted).  That the head of the screw also has a threaded

15  shaft does not preclude it from having all of the features necessary to be a cap according to the

16  limitations of claim 1.  In the cases Simpson cites, each element was part of the claim at issue, and

17  yet the accused products could not satisfy them all.  *See Becton*, 616 F.3d at 1254 (quoting a single

18  claim listing four separate elements, each one claimed); *Intex Recreation Corp. v. Team*

19  *Worldwide Corp.*, 59 F. Supp. 3d 28, 41 (D.D.C. 2014) (noting that each claim of the patent

20  included the limitation at issue).

21          That said, my separate elements construction does entitle Simpson to summary judgment

22  on claims 3 and 7.  Those claims—which are dependent on claim 1—provide that the apparatus

23  "further compris[es]" a screw.  '998 Patent 6:44, 54.  Yet in order for the Accused Products to

24  meet the cap limitation of claim 1, the screw must be part of the apparatus described there.  The

25  head of the screw cannot serve as both the cap and the screw in a claim where both are required.

26  *See Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010)

27  ("There is nothing in the asserted claims to suggest that the hinged arm and the spring means can

28  be the same structure."); *Intex Recreation Corp. v. Team Worldwide Corp.*, 59 F. Supp. 3d 28, 43

8

1   (D.D.C. 2014) ("Because there is no genuine question that the pump housing in the accused

2   devices would be viewed as part of the pump itself, the housing cannot satisfy the separate claim

3   limitation of a socket.").  Because the Accused Products do not have a separate screw element to

4   satisfy claims 3 and 7, Simpson is entitled to summary judgment of noninfringement of those

5   claims.

6               **2.  Closed cover and disposed within**

7       The parties also dispute whether the head of the screw can satisfy the cap limitation.

8   According to Simpson, even apart from the separate elements construction, the head of the screw

9   cannot satisfy the cap limitation because when separated from the shaft, it has a hole in it (namely,

10  the recess for use with a screw driver).  Simpson MSJ 10-11.  Simpson points out that OZCO's

11  expert treats the head of the screw as distinct from the shaft—including the conical neck—in order

12  to be able to assert that the head of the screw is "situated entirely within" the intermediate

13  cylindrical surface (as is required for the cap).  *Id.* at 11; *see* Expert Report of Paul Hatch, Minor

14  Decl. Ex. D [Dkt. No. 102-1] 55-56 (showing the shaft in green).

15      At claim construction, OZCO agreed to the "closed cover" construction of cap and

16  conceded that the construction means the cap does not have a hole in it.[3]  OZCO now argues that

17  the head of the screw is a "closed cover" because it "covers the opening made by the washer/nut

18  member's intermediate cylindrical surface."  OZCO MSJ 14; OZCO Oppo. 2.  In response to the

19  argument that the screw head has a hole when separated from the shaft, OZCO asserts that

20  Simpson's position runs counter to its invalidity contentions and its employees' testimony that the

21  head of a screw can be a cap.[4]  *See* OZCO Oppo. 1-7.

22      Material disputes of fact preclude summary judgment in favor of either side.  A fact finder

23

24  [3] OZCO wrote during claim construction briefing, "Simpson argues that the plain and ordinary
    meaning of 'cap' is 'a closed cover.'  Response at 17-20 [Dkt. No. 79].  As OZCO now
25  understands Simpson's concern (the cap shouldn't have a hole in it), OZCO can accept Simpson's
    proposal that the term 'cap' be construed as 'a closed cover.'"  OZCO Reply ISO Claim
26  Construction [Dkt. No. 80] 5.

27  [4] OZCO relies on Simpson employees' deposition testimony that the head of the screw can be a
    cap.  OZCO MSJ 15-16; OZCO Oppo. 3-4.  This argument is unpersuasive; the cited testimony
28  cannot establish infringement as a matter of law.

must determine whether the screw head can satisfy the closed cover limitation and whether the recess or the "disposed within" requirement have an impact on that question.

### B. Direct Infringement of the D'701 Patent

Simpson moves for summary judgment of no indirect infringement of the '701 Design Patent, asserting that no reasonable juror could conclude that the Accused Products are substantially similar to the patented design. Simpson MSJ 11-20. OZCO counters that Simpson improperly isolates minor differences and that material disputes of fact preclude judgment as a matter of law in Simpson's favor.[5] OZCO Oppo. 19-25.

A product's design infringes a design patent when an ordinary observer would believe the two designs to be "substantially the same" and thus be deceived into purchasing one, "supposing it to be the other." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015) (citing *Egyptian Goddess*, 543 F.3d at 670). To determine infringement, "the patented and accused designs are compared for overall visual similarity." *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995). Differences "must be evaluated in the context of the claimed design as a whole, and not in the context of separate elements in isolation." *Ethicon*, 796 F.3d at 1335; *see also High Point Design LLC v. Buyer's Direct, Inc.*, 621 F. App'x 632, 640–41 (Fed. Cir. 2015) (concluding that the district court erred by "fail[ing] to properly consider the ornamental aspects of the designs at issue"). "Summary judgment of non-infringement is appropriate when no reasonable fact-finder could find the accused design substantially similar to the claimed design." *High Point Design LLC v. Buyer's Direct, Inc.*, 621 F. App'x 632, 640–41 (Fed. Cir. 2015).

In *KeyStone*, the Federal Circuit affirmed summary judgment of noninfringement because the plaintiff's theory of infringement was based on improperly isolating certain features of the claimed design. *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450 (Fed. Cir. 1993) ("A patented design is defined by the drawings in the patent, not just by one feature of the claimed design."). The district court had noted that when the accused retaining wall block was

---

[5] OZCO does not move for summary judgment itself.

"engaged in its normal use, as a retaining wall," its appearance "look[ed] virtually identical" to the patented block. *Id.* (quoting the district court's order). But because the features of the two blocks were not substantially similar when *not* embedded in a wall, there could be no infringement. *Id.* The Federal Circuit affirmed, noting that the block—not a wall—was the subject of the patent. *Id.* "[O]ne cannot establish design patent infringement by showing similarity of only one part of a patented design if the designs as a whole are substantially dissimilar." *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450 (Fed. Cir. 1993); *see also Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1241 (Fed. Cir. 2009) (noting that "normal use should not be limited to only one phase or portion of the normal use lifetime of an accused product"); *Po-Hsun Lin v. Belkin Int'l, Inc.*, No. 16-cv-628, 2017 WL 2903261, at *5-6 (C.D. Cal. May 12, 2017) (finding designs distinct although they consisted of the same cables and connectors because the manner in which pieces were attached "[was] substantially different and result[ed] in a substantially different visual appearance overall").

No reasonable juror could find that a consumer might be deceived into purchasing the Accused Products believing them to be the patented design. Several differences create a dissimilar overall appearance, as the images below show:

D'901 Patent, Figure 1


The Accused Products[6]

---

[6] The images of the Accused Products shown here come from the Pratt report. *See* Minor Decl. Ex. J [Dkt. No. 102-1, ECF p.199]. OZCO alleges infringement only based on the products' use together.



No ordinary observer could fail to see these differences and understand that Simpson's products are not the same as the patented design. The shear tube clearly protrudes from the bottom of the washer, and the shafts of the screws protrude several inches. In addition, the Accused Products have a slightly softer, curved look.

OZCO essentially concedes that the shear tube and screw shaft are distinct from the design but argues that I should disregard them for purposes of the infringement analysis. Contrary to OZCO's arguments, it is not appropriate to disregard the screw as a purely functional feature. *See* OZCO Oppo. 19-21. As Simpson points out, courts ignore functional features not of accused products but instead of the patented design.[7] *See Kao v. Snow Monster Inc.*, No. 17-cv-08934, 2019 WL 2164192, at *3 (C.D. Cal. May 16, 2019) (noting that the patented design's slightly smaller mouth size was functional and finding it insufficient to insufficient to support a finding that there was no triable issue); *Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1323 (Fed. Cir. 2016) (noting that the functional features of the design should not be a focus of the infringement analysis, but should be considered insofar as they "contribute to the design's overall ornamentation") *Poly-Am., LP. v. API Indus., Inc.*, 74 F. Supp. 3d 684, 693 (D. Del. 2014), *aff'd sub nom. Poly-Am., L.P. v. Api Indus., Inc.*, 617 F. App'x 997 (Fed. Cir. 2015) (inquiring "which features, if any, should be excluded from the court's infringement analysis by virtue of being purely functional").

OZCO's additional arguments are unpersuasive. The screw does not merely serve a

---

[7] Here, I would ignore the threading around the cap because that is purely functional.

functional purpose, nor is it merely an added feature; it is fundamental to OZCO's theory of infringement of the D'701 Patent. The head of the screw is crucial to creating the visual similarities between the Accused Products and the D'701 Patent. It would be improper to consider the screw insofar as it makes the Accused Products appear similar to the patented design but not consider it insofar as it distinguishes them. Nor is the presence of the screw a minimal difference between the patented design and the Accused Products as OZCO argues. It would be impossible for an ordinary observer to miss the presence of the screw in the ordinary use of the products, especially given that it is sold separately from the hex head washer. A consumer might even be drawn to the products for this reason. *See Po-Hsun Lin*, 2017 WL 2903261, at *6 ("Given the functional nature of the other design elements . . . an ordinary observer is also likely to be drawn to those aspects of the design that differ between similar products.").

The protruding shear on the bottom of the washer is an additional difference between the Accused Products and the patented design, and the washer also has a slightly more rounded look. OZCO essentially concedes the shear is a dissimilarity by arguing that it is less noticeable when the screw is inserted. *See* OZCO Oppo. 22 (noting that "if the screw is inserted, the [existence] of the shear tube is further minimized in appearance"). OZCO is correct that both patents aim to simulate bolted hardware, and when installed, they appear similar to such hardware and to one another. But "[s]uch high-level similarities . . . are not sufficient to demonstrate infringement." *See High Point Design*, 621 F. App'x at 642. OZCO's remaining arguments run counter to the Federal Circuit caselaw detailed above. *Compare* OZCO Oppo. 21 ("[N]ormal use begins when the screw is assembled with the hex head washer . . . when the accused product is assembled to misappropriate the claimed design, the screw and the shear tube are only visible for a limited time before they are hidden by the structure being built.") *with KeyStone*, 997 F.2d at 1450 (affirming summary judgment of no infringement even where the product looked "virtually identical" to the patented design only when it was installed).

The design at issue is far from maximalist. As a result, even minor differences in a product would have the potential to create a substantially dissimilar appearance—and as I have noted, the presence of the screw shaft in the Accused Products is far from a minor difference. The features

United States District Court
Northern District of California

described above render Simpson's products plainly dissimilar from the D'701 Patent. Accordingly, there is no need to analyze the prior art. *See Colida v. Nokia, Inc.*, 347 F. App'x 568, 571 (Fed. Cir. 2009) ("[T]he dissimilarities far exceed the similarities when comparing [the patents to the accused product], and no amount of extrinsic evidence can change that.").

### C. Indirect Infringement

Simpson asserts that OZCO's indirect infringement claims fail because it cannot show direct infringement. "[T]he patentee always has the burden to show direct infringement for each instance of indirect infringement." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006). Because OZCO has not proven direct infringement by Simpson or anyone else, its indirect infringement claims necessarily fail.

## II. MOTION TO STRIKE

OZCO moves to strike the expert report of Fred Smith on the grounds that it includes theories that were not properly disclosed in Simpson's invalidity contentions. *See* Expert Report of Fred Smith ("Smith Rpt"), Thomas Decl., Ex. 10, Minor Decl. ISO Oppo. MTS, Ex. B [Dkt. Nos. 105-10, 115-3]; Invalidity Contentions, Minor Decl. ISO Oppo. MTS, Ex. A [Dkt. No. 115-2].

### A. Opinions on the '998 Patent

Acknowledging that it mistakenly omitted charts for two patent references—Jaffa and Dodds—Simpson withdraws them as primary references and withdraws obviousness Combinations 2 and 4, which rely on them. Oppo. MTS 2, 19-20. Simpson also withdraws Combination No. 5, which relies on Patent No. CN 2013820634 to Chen. Oppo. MTS 2 n.2. It argues that I should deny OZCO's motion to strike the remaining parts of Smith's report.

#### 1. Obviousness Combination 1

Smith opines that "Item 84 and the knowledge of a POSITA, either by itself or in combination with Item 83, Item 85, Item 229 and/or Camisasca [Item 314]" renders all claims in the '998 Patent obvious. Smith Report 16. Simpson's invalidity contentions read as follows: "Item 84: In combination with one or more of the following references: 75, 82, **83**, **85**, 86, 224, **229**, 231 and **314** (All Claims)." Invalidity Contentions 29 (emphasis added).

The parties' disputes over this combination boil down to whether Simpson's invalidity contentions were sufficient to give OZCO notice of its theory of obviousness related to Item 84. OZCO argues that the contentions misled it into understanding that Simpson's theory was that Item 84 satisfied certain claim elements on its own, without any prior art references.[8]  Reply MTS 5-6.  By now asserting in the Smith report that Item 84 must be altered—with other prior art references and the knowledge of a POSITA—to satisfy these elements, Simpson improperly introduces a new theory of obviousness.  *Id.*

OZCO's argument essentially relies on characterizing Item 84 as an undisclosed prior art reference.  It reaches too far.  Simpson's invalidity contentions clearly communicated that it intended to rely on Item 84 in combination with nine other references, and Smith's report relies on 84 in combination with four of those same references.  OZCO cites to no authority suggesting that Simpson's disclosures needed to be more detailed than they were; in fact, as I have noted in the past, courts have applied Rule 3-3(b) with more flexibility rather than less.  *See Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-cv-03587-WHO, 2015 U.S. Dist. LEXIS 21413, at *90-91 (N.D. Cal. Feb. 20, 2015) ("Courts in this district have held that Rule 3-3(b) does not always require the accused infringer to spell out in exact detail every particular combination it intends to assert.").  Simpson's contentions met the requirements of Rule 3-3(b); OZCO's motion to strike Combination 1 is DENIED.

### 2.  Obviousness Combination 3

OZCO argues that I should strike Smith's opinions on Combination 3 "at least to the extent [he] relies on Jaffa," the patent Simpson acknowledges it failed to chart.  MTS 12.  Simpson counters that it voluntarily withdrew the combinations that in fact rely on Jaffa, and Combination 3 instead uses it as background information rather than a primary reference.  Oppo. MTS 14-15.  "Several courts in this district have declined to strike from an expert report an undisclosed

---

[8] Specifically, OZCO asserts that the contentions failed to give it notice of Simpsons theory that the following elements were not met by Item 84:  "an annular surface disposed radially between the inner cylindrical surface and the intermediate cylindrical surface" and "wherein the inner cylindrical surface is configured to surround a shaft portion of a screw that contacts the annular surface; and wherein the washer/nut member further comprises an upper annular surface and a flat surface of the cap is substantially flush with the upper annular surface."  Reply MTS 5-6.

reference if the reference is only being used as background material." *Verinata Health, Inc. v. Sequenom, Inc.*, No. C 12-00865 SI, 2014 U.S. Dist. LEXIS 116382, at *16 (N.D. Cal. Aug. 20, 2014) (citing cases and concluding that the expert could "use the reference for foundational or background material"). I will adopt that approach here. Smith may rely on the Jaffa patent as foundational or background material.[9] Any testimony that veers beyond those purposes will not be allowed; the parties can address specifics as necessary in motions in limine. OZCO's motion to strike Combination 3 is DENIED.

### 3. Obviousness Combination 6

The parties' dispute of Combination 6 relies on the same disclosures of Item 84 quoted above.[10] OZCO argues that Smith's report improperly adds theories because it includes an image that was not provided in Simpson's infringement contentions. MTS 14-15. Simpson counters that the report merely provides "a demonstrative illustration that shows what the disclosed combination would look like." Oppo. MTS 16. OZCO's arguments mirror those I addressed above, and they are meritless for the same reasons. I agree with Simpson that this illustration is not a new theory; rather, Simpson's infringement contentions disclose the combination of Item 84 and Camisasca, and the Smith report merely provides more detail about how a POSITA would arrive at that combination and what it would look like. OZCO's motion to strike Combination 6 is DENIED.

### 4. Anticipation

OZCO challenges Smith's opinions on anticipation of the '998 Patent on the grounds that his theories related to the Sammy X-Press are completely different than those Simpson included in its invalidity contentions. MTS 5-7; *compare* Invalidity Contentions B-9 *with* Smith Rpt 12-16.

---

[9] OZCO raises the same arguments here that it did for Combination 1, asserting that Simpson is improperly using the Camisasca prior art reference in a way that was not disclosed in its infringement contentions. For the same reasons described above, I will not strike Smith's opinions on Combination 3 on that basis.

[10] Smith opines that "Item 84 and the knowledge of a POSITA, either by itself or in combination with Item 83, Item 85, Item 229 and/or Camisasca [Item 314]" renders all claims in the '998 Patent obvious. Simpson's invalidity contentions read as follows: "Item 84: In combination with one or more of the following references: 75, 82, **83**, 85, 86, 224, 229, 231 and **314** (All Claims)." Invalidity Contentions 29 (emphasis added).

1    Simpson counters that its invalidity contentions point to examples of an inner cylindrical surface

2    and an annular surface rather than pointing to all such surfaces, and while this oversight is

3    "regrettable," it does not mean that Smith's report constitutes a new theory of liability.  Oppo.

4    MTS 17-19.  According to Simpson, it is not appropriate to strike the report because OZCO—

5    which had months to raise this inconsistency with Simpson—is not prejudiced by it.  *Id.* at 18-19.

6    In reply, OZCO asserts that Smith's report presents a new theory because "[i]t is the relation of

7    [the inner cylindrical and annular surface] elements to each other and other elements that must be

8    considered for an invalidity theory."  Reply MTS 1-4.  By identifying the wrong elements,

9    Simpson failed to give OZCO fair notice.

10        The parties' dispute boils down to whether knowing that Simpson intended to assert

11    anticipation based on the Sammy X-Press gave OZCO sufficient notice of Simpson's theory of

12    anticipation.  While OZCO is correct that the relationship of the elements is key to the patented

13    claims, I will not strike Smith's anticipation opinions.  *See Finjan, Inc. v. Symantec Corp.*, No. 14-

14    cv-02998-HSG (JSC), 2018 U.S. Dist. LEXIS 14952, at *18 (N.D. Cal. Jan. 29, 2018) ("District

15    courts have wide discretion in enforcing the patent local rules.") (internal quotation marks and

16    citation omitted).  The invalidity contentions made clear to OZCO that Simpson intended to use

17    the Sammy X-Press to assert an anticipation theory of invalidity.  OZCO's motion to strike this

18    opinion is DENIED.

19       **B.  Opinions on the D'701 Patent**

20        OZCO first challenges Smith's opinion on anticipation of the D'701 Patent on the grounds

21    that it relies on a Nylock and set screw, which was not asserted as prior art to the patent.  Simpson

22    agrees to withdraw that reference, and OZCO has not challenged Smith's opinions based on Items

23    30 and 31.  Oppo. MTS 20.

24        OZCO next challenges Smith's opinion on the invalidity of the D'701 Patent on the

25    grounds that he failed to apply a proper methodology.  MTS 15-16.  Smith opines that if the jury

26    finds that the Accused Products infringe the D'701 Patent, then the Patent is invalid because "hex-

27    head washers with protruding screw shafts have existed for decades."  Oppo. MTS 21-22.  OZCO

28    counters that this opinion improperly assumes facts not in evidence and would not be helpful to a

jury.  The motion to strike is moot as it relates to the D'701 Patent because Simpson is entitled to summary judgment of noninfringement on that patent.

## III.    SUMMARY JUDGMENT ON INVALIDITY

OZCO moves for summary judgment on Simpson's invalidity claims.  First it asserts that without the expert report of Fred Smith, Simpson has no evidence to support its anticipation and obviousness arguments.  OZCO MSJ 20-22.  Second, it asserts that Simpson fails to provide clear and convincing evidence that the prior art references Smith relied on were publicly available before the Asserted Patents' respective priority dates.  *Id.* at 22-26.  Simpson counters that material disputes of fact preclude judgment as a matter of law on the question of the patents' validity.

"If the claimed invention was 'described in a printed publication' either before the date of invention, 35 U.S.C. § 102(a), or more than one year before the U.S. patent application was filed, 35 U.S.C. § 102(b), then that prior art anticipates the patent."  *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1334 (Fed. Cir. 2008).  "[T]he anticipation inquiry proceeds on a claim-by-claim basis."  *Id.*  "The way in which the elements are arranged or combined in the claim must itself be disclosed, either expressly or inherently, in an anticipatory reference."  *Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1332 (Fed. Cir. 2010).  A party asserting this defense must establish invalidity with clear and convincing evidence.  *See Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 15-CV-05008 NC, 2016 WL 6427850, at *3 (N.D. Cal. Oct. 31, 2016) (granting summary judgment where the only evidence of invalidity was not enough to "leave[] the fact finder with a firm belief or conviction" that the patent was obvious or anticipated).

35 U.S.C. § 103(a) prohibits the issuance of a patent when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."  35 U.S.C. § 103(a).  Obviousness is a question of law based on underlying factual determinations.  *Insite Vision Inc. v. Sandoz, Inc.*, 783 F.3d 853, 858 (Fed. Cir. 2015).  The underlying factual inquires include:  (i) "the scope and the content of the prior art;" (ii) "the level of ordinary skill in the art;" and (iii) "the differences between the

18

claimed invention and the prior art." *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966). Secondary indicators such as "commercial success, long felt but unsolved needs, [and] failure of others," that can "give light to the circumstances surrounding the origin of the subject matter sought to be patented" should also be considered. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 399 (2007) (internal citations and quotation marks omitted). Evidence of secondary considerations "may often be the most probative and cogent evidence [of nonobviousness] in the record." *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538 (Fed. Cir. 1983). To invalidate a patent on the basis of obviousness, the moving party must prove obviousness by clear and convincing evidence. *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1339 (Fed. Cir. 2003).

OZCO first argues that if I strike the Smith report, it is entitled to summary judgment that (i) claims 1 and 2 of the '998 Patent were not anticipated by the Sammy X-Press, (ii) claims 1, 2, 3, 4, 5, and 7 of the '998 Patent were not rendered obvious, (iii) the '701 Patent is not invalid. OZCO MSJ 20-22. Because OZCO's argument is contingent on the absence of the Smith report—which I have declined to strike—it is DENIED.

OZCO next argues that Simpson lacks sufficient evidence for a jury to rely on to find that the following prior art references were available before the relevant priority dates of the patents: Item 80 - Sammy X-Press; Item 83; Item 84; Item 85; Item 30 - ARP Model No: ARP-123-4003 ("ARP"); Item 31- Lambretta Model No. 530679788 ("Lambretta").[11] OZCO MSJ 22-26.

I agree with Simpson that factual disputes preclude summary judgment in OZCO's favor on this question. Smith may opine on the prior art references even if he lacks personal knowledge of whether they were available prior to June 15, 2012 (the '998 Patent's priority date) or June 14, 2013 (the D'701 Patent's priority date). *See MobileMedia Ideas, LLC v. Apple Inc.*, 907 F. Supp. 2d 570, 605 (D. Del. 2012), *vacated in part on other grounds,* 780 F.3d 1159 (Fed. Cir. 2015) ("An expert may reasonably rely on a copyright date on documentation to determine an approximate date of public availability and, absent any evidence to the contrary, the court may

---

[11] Simpson has withdrawn the following reference, which OZCO also challenged: Item 72 McMaster Carr: Model Nos.: 93298A135, 91375A646 ("Nylock + Set Screw"). *See* Oppo. MTS 20.

rely on that prior art date.") (permitting expert testimony based on a printed copyright date where there was no evidence to the contrary); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592, 113 S. Ct. 2786, 2796, 125 L. Ed. 2d 469 (1993) ("[A]n expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation."). OZCO's motion for summary judgment on invalidity is DENIED.

## IV.    MOTIONS TO SEAL

Requests to seal associated with motions for summary judgment are subject to the "compelling reasons" standard. *See Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). OZCO filed a motion to seal portions of its motion summary judgment, supporting exhibits, and exhibits supporting its motion to strike. Dkt. No. 104. OZCO's motion is based on Simpson's designation of the information as confidential during discovery. Simpson then filed a declaration in support of the motion, wherein it consented to unsealing OZCO's motion for summary judgment along with Exhibits 4, 5, 6, 7, 8, 9, 14, 15, 16, 17, and 19. Dkt. No. 108.

Simpson only requests sealing of portions of Exhibit 13, its responses to OZCO's Second Set of Interrogatories, because its answer to Interrogatory 13 includes a customer list for the Accused Products. *Id.* ¶¶ 5-6. There are compelling reasons to seal this information. *See True Health Chiropractic Inc. v. McKesson Corp.*, No. 13-cv-02219-HSG, 2019 U.S. Dist. LEXIS 136654, at *5 (N.D. Cal. Aug. 13, 2019) ("[C]ustomer lists generally constitute trade secrets, which the Ninth Circuit has held is sealable under the heightened 'compelling reasons' standard."). Simpson's request to redact portions of Exhibit 13 is GRANTED; the remainder of OZCO's motion to file under seal is DENIED AS MOOT. The Clerk shall UNSEAL all of the entries at Dkt. No. 104 **excluding** Dkt. No. 104-29. A public redacted version of Dkt. No. 104-29 can be found at Dkt. No. 108.

## CONCLUSION

For the reasons set forth above, Simpson's motion for summary judgment of noninfringement is GRANTED as to claims 3 and 7 of the '998 Patent and as to the D'701 Patent. OZCO's motions are DENIED.

This case is referred to the Hon. Thomas S. Hixson for settlement purposes only.

**IT IS SO ORDERED.**

Dated: November 14, 2019



William H. Orrick
United States District Judge