UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMPSON STRONG-TIE COMPANY, INC, <br><br> Plaintiff, <br><br> v. <br><br> OZ-POST INTERNATIONAL, LLC, <br><br> Defendant. | Case No. 3:18-cv-01188-WHO <br><br> **SECOND CLAIM CONSTRUCTION ORDER** <br><br> Re: Dkt. No. 151 |

Before me is a second round of disputes over claim terms from two patents that were recently added to this declaratory judgment action brought by Simpson Strong-Tie Company, Inc. ("Simpson") against patent owner Oz-Post International LLC dba OZCO Building Products ("OZCO"). My constructions of the parties' disputed terms follow.

## BACKGROUND

Simpson and OZCO are competitor companies that design and manufacture connectors and anchors for the construction industry. Until March of this year, this case involved assertions of infringement, noninfringement, and invalidity related to two patents assigned to OZCO: U.S. Patent No. 9,957,998 ("the '998 Patent") and U.S. Design Patent No. D798,701 ("the '701 Patent"). The '998 Patent aims to simulate antique architectural hardware (like rivet, nail, and pin or nut, bolt, and washer connectors) with mounting hardware that is both easier to install and more cost effective. '998 Patent 1:30–31, 53–56.

On March 26, 2019, I construed the ten most significant claim terms from the '998 Patent.[1] First Claim Construction Order [Dkt. No. 87]. On November 14, 2019, I granted partial summary

---

[1] The parties did not request construction of the '701 Patent.

judgment in favor of Simpson. Dkt. No. 129.

On March 10, I granted the parties' joint request to vacate the trial date and set a new case schedule that would allow the addition of two patents issued to OZCO in December 2019: U.S. Patent No. 10,520,007 ("'007 Patent") and U.S. Design Patent No. D870,545 ("'545 Patent"). Both the '007 and '545 Patents are continuations of the '998 Patent. Before me now are the parties' disputed claim terms from those two patents. After briefing by both sides, a virtual claim construction hearing occurred on June 5, 2020.

## LEGAL STANDARD

Claim construction is a matter of law. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). "Generally, a claim term is given its ordinary and customary meaning—the meaning that a term would have to a person of ordinary skill in the art in question at the time of the invention." *Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F.3d 1312, 1320 (Fed. Cir. 2016) (internal quotation marks and citation omitted). In determining the proper construction of a claim, a court begins with the intrinsic evidence of record, consisting of the claim language, the patent specification, and, if in evidence, the prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005); *see also Vitronics*, 90 F.3d at 1582. "A claim term used in multiple claims should be construed consistently . . . ." *Inverness Med. Switzerland GmbH v. Princeton Biomeditech Corp.*, 309 F.3d 1365, 1371 (Fed. Cir. 2002).

"The appropriate starting point . . . is always with the language of the asserted claim itself." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1312. "There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). Such redefinition or disavowal need not be express to be clear. *Trustees of Columbia Univ. in City*

2

*of New York v. Symantec Corp.*, 811 F.3d 1359, 1364 (Fed. Cir. 2016).

Like a person of ordinary skill in the art, courts read terms in the context of the claim and of the entire patent, including the specification. *Phillips*, 415 F.3d at 1313. The specification is "the single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582. "The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). The court may also consider the prosecution history of the patent, if in evidence. *Markman*, 52 F.3d at 980. The prosecution history may "inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Phillips*, 415 F.3d at 1317 (citing *Vitronics*, 90 F.3d at 1582-83); *see also Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005) ("The purpose of consulting the prosecution history in construing a claim is to exclude any interpretation that was disclaimed during prosecution.") (internal quotations omitted).

In most situations, analysis of this intrinsic evidence alone will resolve claim construction disputes, *Vitronics*, 90 F.3d at 1583; however, a court can further consult "trustworthy extrinsic evidence" to compare its construction to "widely held understandings in the pertinent technical field," *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1309 (Fed. Cir. 1999). Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. All extrinsic evidence should be evaluated in light of the intrinsic evidence, *Phillips*, 415 F.3d at 1319, and courts should not rely on extrinsic evidence in claim construction to contradict the meaning of claims discernible from examination of the claims, the written description, and the prosecution history, *Pitney Bowes*, 182 F.3d at 1308 (citing *Vitronics*, 90 F.3d at 1583).

## DISCUSSION

OZCO and Simpson have reached agreement on the appropriate constructions for the following six terms:

3

| Claim Term | Agreed Construction |
|---|---|
| "annular surface" | "a ring-shaped surface between two circles" |
| "cap" | "a closed cover" |
| "disposed radially" | "extending uniformly from and perpendicular to a straight line running through the center of the washer/nut member" |
| "flange portion" | "a projecting edge" |
| "plurality" | "two or more" |
| "cap," "screw," and "nut-and-washer member" | The "cap," "screw," and "nut-and-washer member" are separate elements |

## I. THE '007 PATENT

The parties disagree over the appropriate constructions for the following terms from the '007 Patent.

### A. Preambles

There are two disputes over preambles in the '007 Patent: first, how to define them, namely whether the claims have a "preamble-within-a-preamble" structure, and second, whether the preambles are limiting. I will adopt Simpson's proposals on both questions with the exception of claim 8, which is a method claim, based on Simpson's stipulation during the hearing.

| Claim | Simpson's Proposal | OZCO's Proposal | Court's Ruling |
|---|---|---|---|
| Claim 1 Preamble | "A decorative hardware assembly, comprising: a nut-and- washer connector configured to structurally connect to a first architectural member, the nut-and-washer connector comprising:"<br><br>Not limiting | "A decorative hardware assembly, comprising:"<br><br>Limiting | "A decorative hardware assembly, comprising: a nut-and- washer connector configured to structurally connect to a first architectural member, the nut-and-washer connector comprising:"<br><br>Not limiting |
| Claim 6 Preamble | "A decorative hardware assembly, comprising: a nut-and- washer member configured to structurally connect to a first architectural member, the nut-and- | "A decorative hardware assembly, comprising:" | "A decorative hardware assembly, comprising: a nut-and- washer member configured to structurally connect to a first architectural member, the nut-and-washer member comprising:" |

4

| | | | |
|---|---|---|---|
| | washer member comprising:"<br><br>Not limiting | Limiting | Not limiting |
| Claim 8 Preamble | "A method of simulating an architectural hardware installation, comprising: providing a simulated nut-and-washer member comprising:"<br><br>Not limiting | "A method of simulating an architectural hardware installation, comprising:"<br><br>Limiting | "A method of simulating an architectural hardware installation, comprising:"<br><br>Not limiting |
| Claim 12 Preamble | "A decorative hardware assembly, comprising: a nut-and-washer connector configured to structurally connect to an architectural member comprising:"<br><br>Not limiting | "A decorative hardware assembly, comprising:"<br><br>Limiting | "A decorative hardware assembly, comprising: a nut-and-washer connector configured to structurally connect to an architectural member comprising:"<br><br>Not limiting |

A preamble encompasses the introductory words of a claim. *Corning Glass Works v. Sumitomo Elec. U.S.A.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989). "In the parlance of patent law, the transition 'comprising' creates a presumption that the recited elements are only a part of the device, that the claim does not exclude additional, unrecited elements." *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l*, 246 F.3d 1336, 1348 (Fed. Cir. 2001). But, "when used in the body of a claim, and not as a transition, the term 'comprising' should be interpreted according to the normal rules of claim interpretation." *Barnes & Noble, Inc. v. LSI Corp.*, No. 11-cv-2709-EMC, 2014 WL 1365422, at *23 (N.D. Cal. Apr. 7, 2014).

A preamble is generally not construed to limit the claim language that follows. *See Summit 6, LLC v. Samsung Elecs.*, 802 F.3d 1283, 1292 (Fed. Cir. 2015). It may be limiting "if it recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim." *Catalina Mktg. Int'l v. Coolsavings.com*, 289 F.3d 801, 808 (Fed. Cir. 2002) (internal quotation marks and citation omitted). But a preamble is not limiting if it "merely states the purpose or intended use of an invention," *see Pacing Techs., LLC v. Garmin Int'l*, 778 F.3d 1021,

1023 (Fed. Cir. 2015) (internal quotation marks and citation omitted), or if it "is duplicative of the limitations in the body of the claim and merely provides context for the limitations," *see Summit 6*, 802 F.3d at 1292.

The parties dispute how to define the preambles and whether the preambles are limiting. OZCO Opening 8–11; Simpson Response 17–22. Although the preamble-within-a-preamble structure is "unconventional," the Federal Circuit has approved of it. *See Microprocessor Enhancement Corp. v. Tex. Instruments Inc.*, 520 F.3d 1367, 1374 (Fed. Cir. 2008); *HTC Corp. v. IPCom GmbH & Co., KG*, 667 F.3d 1270, 1278 (Fed. Cir. 2012). Further, I construed the '998 Patent as having the following preamble-within-a-preamble structure: "An apparatus comprising: a washer/nut member, comprising: . . . ." '998 Patent 6:22–23. I determined that "washer/nut member" was a non-limiting preamble because it served as a contextual label for the body of the claim that followed rather than being essential to understanding the invention.

Consistent with the '998 Patent, I agree with Simpson that claims 1, 6, and 12 have non-limiting preamble-within-a-preamble structures. First, each of these claims has an initial paragraph ending with "comprising"—which the parties agree is a preamble—followed immediately by a second paragraph also ending with "comprising." While the use of the word comprising does not necessarily indicate that the preceding words are a preamble, here the structure shows that drafter intended this language to provide context for the body of the claims that follow.

Second, reading the claims as a whole, it is clear that the disputed second preambles describe the intended use of the invention. The words "configured to" indicate a reference to use. Further, some of the disputed language of the '007 Patent—"nut-and-washer connector" (claims 1 and 12) and "nut-and-washer member" (claims 6 and 8)—directly mirrors the "washer/nut member" preamble from the '998 Patent. All of the language serves as a label for the indented claim elements that follow (e.g., "a base plate . . . a cylindrical portion . . . and an inner annular surface . . ."). Further, the fact that the language at issue repeats (e.g., "configured to structurally connect to a first architectural member" in claims 1, 6, and 12) shows that it is not intended to add a claim limitation.

OZCO's general assertion that that the invention cannot be understood without this language is unpersuasive. *See* OZCO Opening 11. The bodies of the claims that follow recite a structurally complete invention, and the preambles state the invention's intended use. They are not "necessary to give life, meaning, and vitality to the claim." *See Catalina Mktg.*, 289 F.3d at 808. Further, as I noted in the context of the '998 Patent, the construction I adopt here does not eliminate the preamble language or instruct the jury to ignore it; instead, it properly characterizes the language for the jury's understanding.

As far as claim 8, which is a method claim, at the hearing Simpson indicated agreement with my tentative construction adopting OZCO's proposal that only the initial language constitutes a preamble; however, it asked that I clarify that the phrase "nut-and-washer member" is not limiting. Consistent with the '998 Patent, that term (in its various forms) does not constitute a limitation separate and apart from the remainder of the claim language.

### B.     "disposed within" terms

The parties dispute three appearances of the term "disposed within," which, per the parties' agreement, I construed to mean "situated entirely within" in the context of the '998 Patent. The question before me is whether there is support for OZCO's contention that the context surrounding the "disposed within" term in the '007 Patent necessitates a different construction than the one it agreed to in the context of the '998 Patent.

| Term | Simpson's Proposal | OZCO's Proposal | Court's Ruling |
|---|---|---|---|
| "disposed within the intermediate cylindrical surface" (claims 1, 12) | "situated entirely within the intermediate cylindrical surface" | "situated within the radius of the intermediate cylindrical surface" | Plain and ordinary meaning |
| "disposed within the first circular opening" (claims 6, 8) | "situated entirely within the first circular opening | "situated within the first circular opening" | Plain and ordinary meaning |
| "disposed within" (claims 1, 6, 8, 12) | "situated entirely within" | Term should be construed with surrounding terms | Plain and ordinary meaning |

Simpson argues that I should import the parties' agreed-upon construction for the '998 Patent into the related '007 Patent, and it criticizes OZCO's shifting constructions over the course

7

of the parties' exchanges prior to the briefing before me now.  Simpson Response 23–27.  While OZCO acknowledges the presumption that the same claim term in related patents should have the same construction, it argues that I am compelled to construe this term differently in the '007 Patent.  OZCO Opening 12; *see Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003) ("[W]e presume, unless otherwise compelled, that the same claim term in the same patent or related patents carries the same construed meaning.").  According to OZCO, the "situated entirely within" construction lacks support in the claim language or the specification of the '007 Patent.  OZCO Opening 12.  While Simpson's proposed construction made no difference for the '998 Patent, to apply it in the '007 Patent would improperly limit the scope of the claims.  Simpson counters that there is no compelling reason to alter the term's construction because "[the two patents] have identical specifications, the claims cover the same disclosed embodiment, the patent claims in each patent reference both 'disposed within' and 'substantially flush,' and Ozco has not introduced any extrinsic evidence to show a different context exists here."  Simpson Response 24.

    I will adopt the plain and ordinary meaning for "disposed within" because I agree with OZCO that it is improper to import the "situated entirely within" construction into the '007 Patent.[2]  Simpson's position relies heavily on the parties' agreed construction for the '998 Patent rather than the '007 Patent's particular claim language, asserting that the '007 Patent's specification is materially the same and that "the claim term is used in an identical contexts in the two related patents."  Simpson Response 31.  When addressing the '998 Patent, I did not indicate a tentative position on the appropriate construction of "disposed within" because I did not intend to construe it.  Dkt. No. 83.  Nor did I analyze the term in the First Claim Construction Order because the parties had agreed on a construction during the hearing.  Although the earlier construction creates a presumption, that presumption is surmountable.

    OZCO has overcome the presumption by raising reasons why the '007 Patent's claim

---

[2] OZCO does not provide sufficient support for its proposal adding the term "radius" to the construction of "disposed within the intermediate cylindrical surface."  In addition, Simpson raises asserted conflicts between the construction and the patent's prosecution history.  Simpson Response 31–32.

language does not support the "situated entirely within" construction. First, OZCO notes the absence of "substantially flush" in the '007 Patent's independent claims, by contrast with the '998 Patent. According to it, to construe "disposed within" as "situated entirely within" would render superfluous the "substantially flush" language in dependent claims 5 and 11. OZCO Opening 14; *see Trustees of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1370 (Fed. Cir. 2016) ("[E]ach claim in a patent is presumptively different in scope.") (internal quotation marks and citation omitted). I agree that the absence of "substantially flush" makes the "situated entirely within" construction problematic in the '007 Patent. While Simpson asserts that a term from another claim should not impact the construction of "disposed within," the presence of that language in claim 1 of the '998 Patent was the basis for OZCO's agreement on the "situated entirely within" construction.

OZCO next notes that a circular opening as described in claims 6 and 8 need only be two-dimensional, while the "situated entirely within" construction suggests that there is necessarily a height. OZCO Opening 14. While Simpson counters that the construction "works" for either two- or three-dimensional openings, I agree with OZCO that this difference in language suggests an improper construction. *See* Simpson Response 32–33.

Simpson raises two additional reasons why I should not alter the construction of this term for the '007 Patent. First, it asserts that OZCO's experts testified that "disposed within" means "situated entirely within." Simpson Response 11–12. But as OZCO points out, their opinions and understandings stemmed from the parties' agreed-upon construction. If, as Simpson argued at the hearing, their opinions indeed encompassed an opinion regarding the vertical relationship in addition to the horizontal relationship, Simpson can raise any inconsistencies on cross-examination. Second, Simpson argues that a different construction will cause jury confusion. Particularly because I am adopting the plain and ordinary meaning, I disagree. The jury will still be instructed that in the '998 Patent, "disposed within" means "situated entirely within."[3] The

---

[3] Contrary to Simpson's suggestion, OZCO will not be permitted to rely on this construction in the context of the '998 Patent. *See* Simpson Response 30 ("In reality, Ozco seeks a construction of 'disposed within' with regard to the '007 Patent that it will likely attempt to rely on to argue infringement with regard to the '998 Patent.").

1  "disposed within" terms in the '007 will not be highlighted for the jury, and jurors will instead be
2  instructed to apply the plain and ordinary meaning to all the patents' remaining terms. The
3  possibility of jury confusion is not sufficiently great to justify a construction that is not supported
4  by the claim language in the '007 Patent.

### C. "substantially flush" (claims 5, 11)

| Term | Simpson's Proposal | OZCO's Proposal | Court's Ruling |
|---|---|---|---|
| "substantially flush" | "substantially level" *or, in the alternative,* plain and ordinary meaning | "adjacent and substantially level" | Plain and ordinary meaning |

In the first round of claim construction, neither party asked that I construe the term "substantially flush" despite its appearance in claim 1 of the '998 Patent. *See* '998 Patent 6:39. Now, however, both parties propose a construction of "substantially level," and OZCO relies on *A Dictionary of Mechanical Engineering* to argue that I should add "adjacent." OZCO Opening 16. I will not adopt either party's proposal because they will create not aid the fact finder in any meaningful way and thus will create an unnecessary inconsistency between the '007 and '998 Patents. As both sides agreed in the past, this term needs no construction.

## II. THE D'545 PATENT

| Term | Simpson's Proposal | OZCO's Proposal | Court's Ruling |
|---|---|---|---|
| "The ornamental design for a threaded connector, as shown and described." | "The ornamental design for a threaded connector, as shown and described in Figures 1-5. The broken lines on the cap shown in Figures 1 and 2, and the length of the threaded shaft (shown with a symbolic break) in Figures 1, 4 and 5, form no part of the claimed design. The design in Figures 1 and 2 shows, among other things, a threaded connection between the cap and the washer/nut member. The claimed design must be | "The ornamental design for a threaded connector, as shown and described in Figures 1-5. The threaded connector is shown with a symbolic break in its length. The broken lines and the appearance of any portion of the article between the break lines forms no part of the claimed design." | "The ornamental design for a threaded connector, as shown and described in Figures 1-5. The threaded connector is shown with a symbolic break in its length. The broken lines and the appearance of any portion of the article between the break lines forms no part of the claimed design." |

10

| | examined as a whole without giving undue consideration to particular features of the claimed design." | | |
|---|---|---|---|

Although constructions of design patents are generally disfavored, here the parties agree that a construction would aid the jury, and their requests are substantially similar. I will adopt OZCO's proposed construction because Simpson's is unnecessarily long and improperly places undue emphasis on one aspect of the design. "[The Federal Circuit] has cautioned, and continues to caution, trial courts about excessive reliance on a detailed verbal description in a design infringement case." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1302 (Fed. Cir. 2010). Verbal descriptions run "the risk of placing undue emphasis on particular features of the design and the risk that a finder of fact will focus on each individual described feature in the verbal description rather than on the design as a whole." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679–80 (Fed. Cir. 2008). Simpson's proposed construction places undue emphasis on one feature in Figures 1 and 2 and then attempts to remedy the problem its construction has introduced by adding that the jury should assess the design as a whole.

Simpson asks that even if I omit its proposed language from the construction, I nonetheless order that OZCO may not argue that the '545 Patent claims anything other than a threaded connection between the cap and washer/nut member, as illustrated by the swirled lines in Figures 1 and 2. Simpson Response 40. The parties agree that the '545 Patent can only claim the '998 Patent's priority date as long as its design was disclosed in the '998 Patent. According to Simpson, the images in the '998 Patent foreclose the argument that there is anything other than a threaded connection between the cap and washer/nut member. *Id.* at 39. OZCO counters that there is no support for Simpson's suggestion that a utility patent's images—not its written description—can place such limits on the scope of a design patent. I agree with OZCO; I am not persuaded it is foreclosed from making this argument. Simpson is free to cross-examine OZCO's experts on the arguments it has raised before me now.

## CONCLUSION

For the reasons set forth above, the '007 and '545 Patent terms are construed as indicated

11

below:

| Claim | Court's Tentative |
|---|---|
| "annular surface" | "a ring-shaped surface between two circles" |
| "cap" | "a closed cover" |
| "disposed radially" | "extending uniformly from and perpendicular to a straight line running through the center of the washer/nut member" |
| "flange portion" | "a projecting edge" |
| "plurality" | "two or more" |
| "cap," "screw," and "nut-and-washer member" | The "cap," "screw," and "nut-and-washer member" are separate elements |
| Claim 1 Preamble | "A decorative hardware assembly, comprising: a nut-and- washer connector configured to structurally connect to a first architectural member, the nut-and-washer connector comprising:"<br><br>Not limiting |
| Claim 6 Preamble | "A decorative hardware assembly, comprising: a nut-and- washer member configured to structurally connect to a first architectural member, the nut-and-washer member comprising:"<br><br>Not limiting |
| Claim 8 Preamble | "A method of simulating an architectural hardware installation, comprising:"<br><br>Not limiting |
| Claim 12 Preamble | "A decorative hardware assembly, comprising: a nut-and-washer connector configured to structurally connect to an architectural member comprising:"<br><br>Not limiting |
| "disposed within the intermediate cylindrical surface" (claims 1, 12) | Plain and ordinary meaning |
| "disposed within the first circular opening" (claims 6, 8) | Plain and ordinary meaning |
| "disposed within" (claims 1, 6, 8, 12) | Plain and ordinary meaning |
| "substantially flush" (claims 5, 11) | Plain and ordinary meaning |
| "The ornamental design for a threaded connector, as shown and described." | "The ornamental design for a threaded connector, as shown and described in Figures 1-5. The threaded connector is shown with a symbolic break in its length. The broken lines and the appearance of any portion of the article between the break lines forms no part of the claimed design." |

**IT IS SO ORDERED.**

Dated: June 15, 2020

William H. Orrick
United States District Judge